## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **SOVEREIGN PEAK VENTURES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **ASUSTEK COMPUTER INC.,** | § | **C.A. NO. _____** |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sovereign Peak Ventures, LLC ("SPV") files this Complaint against Defendant ASUSTeK Computer Inc. ("ASUSTeK" or "Defendant") for infringement of U.S. Patent No. 7,158,148 (the "'148 patent"), U.S. Patent No. 8,902,871 (the "'871 patent"), U.S. Patent No. 9,357,441 (the "'441 patent"), and U.S. Patent No. 10,039,144 (the "'144 patent"), collectively, the "Asserted Patents."

## THE PARTIES

1.      Sovereign Peak Ventures, LLC is a Texas limited liability company, with a principal place of business in Allen, TX. SPV resides in this District.

2.      On information and belief, ASUSTeK is a corporation organized under the laws of Taiwan with a principal place of business at 1F, No. 15, Li-De Road, Beitou District, Taipei 112, Taiwan, R.O.C. ASUSTeK is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as mobile phones, laptops, and computers, accused of infringement. On information and belief, ASUSTeK, along with other foreign and U.S.-based subsidiaries

(which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of ASUSTeK), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length to provide a distribution channel of infringing products within this District and the U.S. nationally.

3.      The Asserted Patents were invented by employees of Panasonic Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. Panasonic made numerous innovations in the home appliance, battery, mobile phone, and television industries. Indeed, Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today. In 1991, Panasonic released the Mova P, the smallest and lightest mobile phone on the market, which revolutionized the industry by showing the demand for a compact, lightweight device. Panasonic also produced the first wide-format plasma display and developed the first digital television for the U.S. market. Panasonic's history of innovation is also borne out by its intellectual property. Indeed, a search of the USPTO database where the patent assignee is "Panasonic" yields over 27,000 matches.

4.      Prior to the filing of the Complaint, SPV repeatedly attempted to engage ASUSTeK and/or its agents in licensing discussions related to the Asserted Patents, including but not limited to providing a non-discriminatory offer to license the portfolio on a worldwide basis, including both implementation and any standards-essential patents in the portfolio, that was reasonable for a license to be taken in the absence of litigation. ASUSTeK ignored these overtures. ASUSTeK's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of SPV's patented technologies without fair compensation to SPV.

5.      On information and belief, ASUSTeK operates in agency with others, including its foreign and U.S.-based subsidiaries. *See, e.g.*, https://successstory.com/companies/asus ("As of 2009, the company had manufacturing facilities in the cities of Taipei, Luzhu, Nangan and Guishan, in Taiwan; Suzhou and Chongqing in Mainland China; Cluded Juarez in Mexico; and Ostrava in Czech Republic. The company operates through its 50 service sites across 32 countries and over 400 service partners worldwide."); https://www.engadget.com/2015-08-16-asus-chairman-jonney-shih-interview.html (As of August 16, 2015, "ASUS is over 13,800 people strong, around 6,000 of whom are based in Taiwan. … the company now offers a broad range of products including laptops, tablets, all-in-ones, smartphones, graphics cards, routers and more.") ASUSTeK is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as mobile phones, laptops, and computers, accused of infringement. ASUSTeK operates in agency with others, including its foreign and U.S.-based subsidiaries, to provide a distribution channel of infringing products within this District and the U.S. nationally. ASUSTeK, itself and between and amongst its agents and foreign and U.S.-based subsidiaries, purposefully direct the Accused Products into established distribution channels within this District and the U.S. nationally.

6.      On information and belief, ASUSTeK maintains a corporate presence in the United States via at least its, U.S.-based sales subsidiaries including, ASUS Computer International ("ACI"). ACI is a corporation organized under the laws of the State of California, with a principal place of business at 48720 Kato Road, Fremont, California 94538. ACI is a wholly-owned subsidiary of ASUSTeK. ACI provides sales, distribution, research, and development support in North America for its parent ASUSTeK, which wholly owns ACI. ACI is an agent of ASUSTeK.

At the direction and control of ASUSTeK, U.S.-based sales subsidiaries including, ACI, import infringing products, such as mobile phones, laptops, and computers, into the United States and this District.

7.      On information and belief, ASUSTeK and its U.S.-based sales subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of ASUSTeK) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, ASUSTeK, alone and via at least the activities of its U.S.-based sales subsidiaries (e.g., ACI), conducts business in the United States, including importing, distributing, and selling mobile phones, laptops, and computers that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

8.      Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of ASUSTeK's electronics, such as mobile phones, laptops, and computers, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries (e.g., ACI), ASUSTeK does business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

9.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c). The Defendant is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

12.      This Court has general and specific personal jurisdiction over Defendant pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) Defendant has done and continues to do business in Texas and (ii) Defendant has, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendant has placed, and is continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendant has derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendant has substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through

and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

13.     This Court has personal jurisdiction over Defendant, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, e.g., ACI. Through direction and control of such subsidiaries, Defendant has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. ACI is a wholly-owned subsidiaries of ASUSTeK. The primary business of ACI is the marketing and sale of electronic products in the United States. ASUSTeK has a 100% controlling ownership interest in ACI and maintains more than half of the voting rights for such subsidiaries as its basis for control. Upon information and belief, ASUSTeK compensates ACI for its sales support services in the United States. As such, ASUSTeK has a direct financial interest in its U.S.-based subsidiaries, and vice versa.

14.     Personal jurisdiction is proper because Defendant has committed acts of infringement in this District. This Court has personal jurisdiction over Defendant because, *inter alia*, this action arises from activities Defendant purposefully directed towards the State of Texas and this District.

15.     Exercising personal jurisdiction over Defendant in this District would not be unreasonable given Defendant's contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to SPV.

16.     In addition, Defendant has knowingly induced and continues to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices

pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

17.     Personal jurisdiction also exists specifically over Defendant because Defendant, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Best Buy and Walmart) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

18.     Personal jurisdiction also exists specifically because Defendant has overlapping executives, interlocking corporate structures, and close relationships as manufacturer, importer, and distributor of the products accused of infringement.

19.     To the extent the foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over Defendant in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of the facts alleged in this Complaint.

20.     In addition, Defendant, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used in Texas, and economically benefits from the retail sale of infringing products in this State. For example, Defendant's products have been sold and are available for sale in this District at Best Buy and Walmart retail stores and are also available for sale and offered for sale in this District through online retailers such as Best Buy, Walmart, and Amazon. ASUSTeK also

advertises its infringing products to consumers in Texas and this District through its agent's websites. *See, e.g.*, https://www.asus.com/us/.

21.     With respect to the '148 patent, the '148 Accused Products are devices that include, but are not limited, to laptops and computers that include the Windows operating system (e.g.,ASUS M241, ASUS V241, ASUS V161, ASUS S300MA, ASUS S340MF, ASUS M509, ASUS M415, ASUS M3700 (AMD Ryzen 5000 Series), ASUS BR1100C, ASUS BR1100F, R543, ASUS E510, ASUS L210, ASUS L410, ASUS L510, ASUS X543, ASUS E410, ASUS X509, ASUS M415 (AMD Ryzen 5000 Series), ASUS M515 (AMD Ryzen 5000 Series), ASUS M570, ASUS W202, ExpertBook B1 B1400, ExpertBook B1 B1500, ExpertBook B9 B9450 (11th Gen Intel), ASUS ExpertBook B9 B9450, ASUS ExpertBook P2, ASUSPRO P3540, ASUSPRO P5440, ExpertCenter D5 SFF D500SA, ExpertCenter D7 SFF D700SA, ExpertCenter D9 SFF D900SA, ASUSPRO D641SC, ASUSPRO D340MC, Mini PC PN51, Mini PC PB61, Mini PC PB60S, Mini PC PB62, Mini PC PN50, Mini PC PN41, Mini PC ProArt PA90, ProArt StudioBook Pro 15 W500, ProArt StudioBook Pro 17 W700, ProArt StudioBook Pro X W730, ProArt StudioBook 15 H500, ProArt StudioBook 17 H700, ProArt StudioBook One W590, ROG Huracan G21CX-UB763, ROG Flow X13 GV301QH-DS96, ROG Flow X13 GV301QH-XS98-B, ROG Mothership GZ700GX-XB98K, ROG G703VI-XH74K, G10DK-WS764 G10DK-WB764, ROG Strix G15 Advantage Edition G513QY-212.SG15, ROG Strix G17 G713QM-ES74, ROG Strix G15 G513QM-ES74, ROG Strix SCAR 15 G533QR-DS76Q, ROG Strix SCAR 15 G533QS-DS76, ROG Strix SCAR 17 G732LWS-DS76, ROG Strix SCAR 17 G733QSA-XS99, ROG Strix G17 G713QR-ES96, ROG Strix G15 G513QM-ES94, ROG Strix G15 G513QR-ES96, ROG Strix G17 G713QM-ES94, ROG Strix SCAR 15 G533QR-XS98Q, ROG Strix SCAR 15 G533QS-XS98Q,ROG Strix SCAR 17 G732LWS-XS98, ROG Strix SCAR 17 G732LXS-XS94, ROG Strix

SCAR 17 G733QR-DS98, ROG Strix SCAR 17 G733QS-XS98Q, ROG Strix GA35 G35DX GA35DX-MB776, ROG Strix GA35 G35DX GA35DX-XB989, ROG Strix GA35 G35DX GA35DX-XB999, ROG Strix G15 G512LWS-PH74, ROG Strix G15 G512LW-ES76, ROG Strix G15 G512LW-XS78, ROG Strix GT15 G15CK-BS764, ROG Strix G15 G512LU-RS74, ROG Strix G15 G512LU-XS74, ROG Strix G15 G512LW-WS74, ROG Strix G15 G512LI-RS73, ROG Strix G17 G712LW-XS78, ROG Strix G17 G712LU-RS73, ROG Strix G17 G712LW-ES74, ROG Strix SCAR 15 G532LWS-DS76, ROG Strix GT35 G35CZ-XH988, ROG Strix GT35 G35CZ-XB982, ROG Strix GT35 G35CZ-XS991, ROG Strix SCAR 15 G532LWS-XS96, ROG Strix SCAR 15 G532LWS-XS99, ROG Strix SCAR 17 G732LXS-XS99, ROG Strix GA15 GA15DH-ES557, ROG Strix GA15 GA15DH-DS757, ROG Strix GL10DH-PH552, ROG Strix GA15 GA15DH-BS762, ROG Strix GL10DH-MH772, ROG Strix GL10DH-NH764, ROG Strix GL10DH-PH762, ROG Strix GL10DH-PH772, ROG Strix GL10DH-RH752, ROG Strix GA35 GA35DX-XS99X, ROG Strix G GL531GU-WB53, ROG Strix G GL531GU-WB53-B, ROG Strix G G531GT-AL123T, ROG Strix G GL531GU-WB74, ROG Strix Hero III G531GW-XB74, ROG Strix SCAR III G531GV-DB76, ROG Strix SCAR III G531GW-DB76, ROG Strix SCAR III G531GW-KB71, ROG Strix SCAR III G531GW-XB96, ROG Strix GL12 G21CX-UB763, ROG Strix GL12CX-DH781, ROG Strix GL12CX-XB771, ROG Strix GL12CX-XB781, ROG Strix GL12CX-XB981, ROG Strix GL12 GL10CS-DS751, ROG Strix GL10CS-DS551, ROG Strix Hero II GL504GM-DS74, ROG Strix SCAR II GL504GS-DS74, ROG Strix SCAR II GL504GS-XS76, ROG Strix SCAR II GL504GW-DS74, ROG Strix SCAR II GL704GM-DH74, ROG Strix SCAR II GL704GV-DS74, ROG Strix SCAR II GL704GW-DS76, ROG Strix SCAR II GL704GW-PS71, ROG Strix GL10CS-DS751, ROG Strix GL12CM-DS762, ROG Strix GL12CP-DS751, ROG Strix GL12CM-DH781-COD, ROG Strix GL12CM-DS761, ROG Strix

GL12CM-DS771, ROG Strix GL12CM-DS781, G15 GA502IV-WS74, G15 GA502IV-XS76, ROG Zephyrus G14-ACRNM GA401IVC-RMT01, ROG Zephyrus G14 GA401IV-BR9N6, ROG Zephyrus G14 GA401IV-BS96-WH, ROG Zephyrus G14 GA401IV-XS96, GX701GVR GA401IU-PB96, G15 GA502IV-PH96, ROG Zephyrus S17 GX703HM-DB76, ROG Zephyrus S17 GX703HM-KF001R, ROG Zephyrus Duo 15 SE GX551QR-XS78, ROG Zephyrus Duo 15 SE GX551QM-ES76, ROG Zephyrus G15 GA503QM-BS94Q, ROG Zephyrus G15 GA503QS-BS96Q, ROG Zephyrus G15 GA503QS-XS98Q-WH, ROG Zephyrus G14 GA401QM-XS98Q-WH, ROG Zephyrus Duo 15 SE GX551QS-XS99, ROG Zephyrus Duo 15 SE GX551QR-XS98, ROG Zephyrus M16 GU603HR-K8004R, ROG Zephyrus M16 GU603HE-K8035R, ROG Zephyrus M16 GU603HM-K8030R, ROG Zephyrus S17 GX703HR-KF051R, ROG Zephyrus S17 GX703HR-XB96, ROG Zephyrus S17 GX703HS-KF004R, ROG Zephyrus S17 GX703HS-XB98, ROG Zephyrus S17 GX703HS-XB99, ROG Zephyrus S17 GX701LWS-XS76, ROG Zephyrus M15 GU502LU-BI7N4, ROG Zephyrus M15 GU502LV-BI7N8, ROG Zephyrus S17 GX701LV-DS76, S17 GX701LXS-XS78, S15 GX502LWS-XS76, S15 GX502LXS-XS79, ROG Zephyrus Duo 15 GX550LWS-XS79, ROG Zephyrus G14 GA401IH-BR7N2BL, GX701GVR GA401IU-BS76, ROG Zephyrus S GX531GX-XB76,  S-GX531GX-XB77, ROG Zephyrus G15 GA502DU-WB73,   SGX531GX-XS74, M GM501GS-XS74, S GX531GW-AS76, GX501GI-XS74, ROG Zephyrus S GX531GW-AB76, VivoStick PC (TS10), 2021 ASUS TUF Dash F15, 2021 ASUS TUF Gaming F15, 2021 ASUS TUF Gaming F17, ASUS TUF Gaming F15, ASUS TUF Gaming F17, ASUS TUF Gaming A17, ASUS TUF Gaming A15, 2021 ASUS TUF Gaming A17, 2021 ASUS TUF Gaming A15, ASUS TUF Gaming FX505DY, ASUS TUF Gaming FX705DY, ASUS TUF Gaming FX705DD/DT/DU, ASUS TUF Gaming FX505DD/DT/DU, VivoBook 14 X412, ASUS VivoBook 17 M712, VivoBook 15 M513 (AMD Ryzen 5000 Series),

VivoBook 15 K513 (11th gen Intel), VivoBook 14 K413 (11th gen Intel), ASUS VivoBook 15 F513IA, VivoBook 17 X712, VivoBook Flip 14 TM420 (AMD Ryzen 5000 Series), ASUS VivoBook Flip 14 TP412, VivoBook Flip 14 TP470, VivoBook Flip 14 TM420, ASUS VivoBook Flip 14 TP401, ASUS VivoBook Flip 12 TP202, K571GT, VivoBook 14 M413, VivoBook S14 (S435), VivoBook S13 S333 (11th Gen Intel), VivoBook S14 S433 (11th Gen Intel), VivoBook S15 S532 (11th Gen Intel), VivoBook S15 S533 (11th Gen Intel), VivoBook 15 M513, ASUS VivoBook S13 S333, ASUS VivoBook S15 S532, ASUS VivoBook S15 S533, VivoBook 14 (M413, AMD Ryzen 5000 Series), VivoMini VC66-C2, Mini PC PN62, Mini PC PN62S, Mini PC PB50, Mini PC PB60, Mini PC PN40, ZenBook 13 OLED (UM325), Q528EH, ZenBook 14 UM425, ZenBook 13 UX325 (11th Gen Intel), ZenBook 14 UX425, ZenBook 14 UX435, ZenBook Duo 14 (UX482), ZenBook 13 OLED (UX325, 11th Gen Intel), ZenBook 14 UM425 (UA), Q507IQ, ZenBook 14 UX425 (11th Gen Intel), ZenBook Duo UX481, ASUS ZenBook 15 UX534, ZenBook 14 UX434, ZenBook 13 UX325, ASUS ZenBook 13 UX334, Q506, ZenBook Flip S UX371 (11th Gen Intel), ZenBook Flip S13 OLED (UX371, 11th Gen Intel), ZenBook Flip 13 OLED (UX363, 11th Gen Intel), ZenBook Flip 15 Q538EI, ZenBook Flip 13 UX363, Zenbook Flip 13 UX363 (11th gen Intel), ZenBook Pro Duo 15 OLED (UX582), ZenBook Pro 15 OLED (UX535), ZenBook Pro 15 UX535, ZenBook Pro Duo UX581, ZenBook S UX393 (11th Gen Intel) ), as well as, their components, and processes related to the same. With respect to the '871 patent, '441 patent, and '144 patent, the Accused Products are devices that support Wi-Fi Direct, including, but not limited to, Defendant's mobile phones, tablets, laptops, and computers, as well as, their components, and processes related to the same. Such ASUS mobile phones include the following products (and, where indicated, product model): ROG Phone 2 ZS660KL, ROG Phone 3, 3 Strix, ROG Phone 5, ROG Phone 5 Pro, ROG Phone 5 Ultimate, ROG Phone ZS600KL,

Zenfone 2 ZE551ML, Zenfone 3 Deluxe 5.5 ZS550KL, Zenfone 3 Deluxe ZS570KL, Zenfone 3 Max ZC553KL, Zenfone 3 ZE552KL, ZE520KL, ZA520KL, Zenfone 3 Zoom ASUS_ZE553KL (ASUS_Z01HDA, ASUS_Z01HD), Zenfone 4 Max Plus (M1) ZB570TL, Zenfone 4 Max, Max Pro ZC554KL, Zenfone 4 Pro ZS551KL, Zenfone 4 Selfie Pro ASUS_ZD552KL (ASUS_Z01MD), Zenfone 4 ZE554KL, Zenfone 5 Lite ZC600KL, Zenfone 5 ZE620KL, ZF620KL, Zenfone 5Q ZC600KL (USA), Zenfone 5z ASUS_ZS620KL (ASUS_Z01HD, ASUS_Z01RS, ASUS_Z01RD), Zenfone 6 ZS630KL, Zenfone 7, 7 Pro, Zenfone 8, 8 Flip, Zenfone AR V570KL (Verizon), Zenfone Go ZB500KL, Zenfone Live (L2), Zenfone Max (M1) ZB555KL, ZB556KL, Zenfone Max (M2) ZB633KL, Zenfone Max Plus (M2) ZB634KL, Zenfone Max Pro (M1) ZB601KL, ZB602K, Zenfone Max Pro (M2) ZB631KL, Zenfone Max Shot ZB634KL, Zenfone Max ZC550KL (ASUS_Z010D), Zenfone V V520KL (ASUS_A006), ASUS_X00GDA, ASUS_I002D, ASUS_I01WD, ASUS_I01WDX, ASUS_I002D, I003D, ASUS_I003DD, ASUS_I001D, ASUS_I001DD, I001DA, I001DB, I001DC, I001DE, ASUS_I01WD, ASUS_I01WDX, I001DA, I001DB, I001DC, I001DE, ASUS_I001D, ASUS_I001DD, ASUS_I01WDX, ASUS_I01WD, ASUS_Z01QD, ASUS_Z01GS, ASUS_X00QD, ASUS_Z01GD, ASUS_Z01KD, ASUS_Z01GS, ASUS_X00DDA, ASUS_X00DS, ASUS_X00LD, ASUS_X00LDA, ASUS_X00LDB, ZB553KL, ASUS_Z01KD, ASUS_X00GD, ASUS_X00ID, ASUS_X00DDA, ASUS_X00DDB, ASUS_X00DD, ASUS_Z010DD, ASUS_X009DD, ASUS_X007D, ASUS_X007DB, ASUS_Z00ED, Z00ED, ASUS_X01BD, ASUS_X01BDA, ASUS_X00TD, ASUS_A001D, ASUS_A001, ASUS_A002, ASUS_A002A, ASUS_A007, ASUS_A009, ASUS_L001, ASUS_X00H, ASUS_X013D, ASUS_X013DA, ASUS_X013DB, ASUS_X014D, ASUS_X01AD, ASUS_X01AD, ASUS_Z00AD, ASUS_Z00EDE, ASUS_Z00EDF, ASUS_Z00EDG, ASUS_Z00XS,

ASUS_Z012D, ASUS_Z016D, ASUS_Z016DA, ASUS_Z016S, ASUS_Z017D, ASUS_Z01FD, ASUS_ZC551KL (ASUS_Z01BS, ASUS_Z01BD), ASUS_ZE550KG (ASUS_Z00WD), ASUS_ZE550KLA (ASUS_Z00LD), ZB551KL, ZT500KL, ZT582KL (ASUS_P00J). Such ASUS tablets include the following products (and, where indicated, product model): ASUS Pad (POOL), ASUS ZenPad Z8 (P008), Asus ZenPad 8.0 (P00A), Asus ZenPad 10 (P00C, P028), Asus Zenpad C 7.0 (P01Y_S), ASUS PadFone X (T00D_SMR). And such ASUS laptops and computers include the following products (and, where indicated, product model): ASUS NovaGo (TP370QL), ASUS TUF Gaming F15 (FX506L, TUF506L, TUF566L,FX566L, MW506L), ASUS TUF Gaming F17 (FX706L, TUF706L, TUF766L, FX766L, MW706L), ROG Strix G15 (G512L,GL512L,GL542L,PX512L), ROG Strix G17 (G712L,GL712L,GL742L,PX712L), ROG Strix GT15 (G15C), ROG Strix GT35 (G35C), ROG Strix SCAR 15 (G532L,GL532L,G542L), ROG Strix SCAR 17 (G732L,GL732L,G742L), ROG Zephyrus Duo 15 (GX550L), ROG Zephyrus G (GU502D, GA502D), ROG Zephyrus G14 (GA401I), ROG Zephyrus M15 (GU502L,GU532L,PZ502L), ROG Zephyrus S15 (GX502L,GX532L), ROG Zephyrus S17 (GX701L,GX735L), Zephyrus G15 (GA502I). On information and belief, ASUSTeK controls or otherwise directs and authorizes all activities of its U.S.-based sales subsidiaries, including ACI. Such directed and authorized activities include, the U.S.-based subsidiaries' using, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents. The Defendant's U.S.-based sales subsidiaries (e.g., ACI) are authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendant. For example, ASUSTeK researches, designs, develops, and manufactures mobile phones, laptops, and computers, and then directs its U.S.-based sales subsidiaries to import, distribute, offer for sale,

and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Furthermore, Defendant's U.S.-based sales subsidiaries also administer, on behalf of Defendant, requests for service under and any disputes arising from Defendant's limited warranty of the Accused Products sold in the U.S., including in Texas and this judicial district. *See, e.g.*, https://www.asus.com/support/images/upload/warranty/us_ZenFone.pdf; https://bacchus.asus.com/support/images/upload/warranty/us_Notebook.pdf; https://bacchus.asus.com//support/images/upload/warranty/us_Desktop%20PC.pdf. Thus, Defendant's U.S.-based sales subsidiaries, including ACI, conduct infringing activities on behalf of Defendant.

22. On information and belief, Defendant's U.S.-based sales subsidiaries' corporate presence in the United States gives ASUSTeK substantially the same business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state. Defendant's U.S.-based sales subsidiaries are authorized to import, distribute, sell, and offer for sale Defendant's products, including mobile phones, tablets, laptops, and computers incorporating infringing devices and processes, on behalf of Defendant. For example, Defendant's U.S.-based sales subsidiaries operate within Defendant's global network of sales subsidiaries. In the U.S., including within the Eastern District of Texas, Defendant's mobile phones, laptops, and computers, which incorporate infringing devices and processes, are imported, distributed, offered for sale, and sold.

23.    Via Defendant's alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Defendant's products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in retail stores, both brick and mortar and online, in Texas including within this judicial district. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)). For example, Defendant's phones, laptops, and computers are sold to end users by the U.S.-based subsidiaries, distributors, and customers, including, but not limited to, ACI, online and at retail stores located throughout the Eastern District of Texas.

24.    On information and belief, ASUSTeK has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as ACI, and customers such as AT&T, Verizon, Best Buy, Walmart, and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result, ASUSTeK has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent

that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

25.     In the alternative, the Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendant is consistent with the U.S. Constitution.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 7,158,148)

27.     Plaintiff incorporates paragraphs 1 through 26 herein by reference.

28.     SPV is the assignee of the '148 patent, entitled "Display Equipment, Display Method, and Recording Medium for Recording Display Control Program," with ownership of all substantial rights in the '148 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

29.     The '148 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '148 patent issued from U.S. Patent Application No. 10/202,392.

30.     ASUSTeK has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '148 patent in this judicial district and elsewhere in Texas and the United States.

31.     ASUSTeK designs, develops, manufactures, assembles and markets laptops, computers, and other devices that comprise the Windows operating system.

32.     ASUSTeK directly infringes the '148 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those '148 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '148 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, ASUSTeK sells and makes the '148 Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the '148 Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '148 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, ASUSTeK directly infringes the '148 patent through its direct involvement in the activities of its subsidiaries, including ACI, including by selling and offering for sale the '148 Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '148 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those '148 Accused Products. On information and belief, ASUSTeK offers for sale, sells, and imports the '148 Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, ASUSTeK is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., ACI, (under both the alter ego and agency theories) because, as an example and on information and belief, ASUSTeK and ACI are

essentially the same company, and ASUSTeK has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., ACI.

33.     For example, ASUSTeK infringes claim 4 of the '148 patent via the '148 Accused Products. The '148 Accused Products comprise display equipment.

34.     The '148 Accused Products each comprise "a display device; the display device including three light-emitting elements aligned with each other in certain sequence to form a pixel, the three light-emitting elements illuminating three primary colors RGB; a plurality of the pixels aligned with each other in a first direction to form a line; a plurality of the lines aligned with each other in a second direction perpendicular to the first direction, thereby forming a display screen on the display device" of claim 4.  For example and as illustrated below, the '148 Accused Products comprise a display device, which may be an LCD comprising RGB pixels arranged in an orthogonal array (as illustrated below) to form a display screen on a display device.



35.     The '148 Accused Products each comprise "a pattern-determining unit operable to determine a three-times magnified pattern of a target pixel by magnifying the target pixel three times in the first direction in accordance with a raster image to be displayed" of claim 4. For example, each of the '148 Accused Products include a version of the Windows operating system, which includes DirectWrite, which is a text layout rendering API. DirectWrite utilizes ClearType to render text by using sub-pixel positioning. For example, the ClearType sub-pixel font rendering magnifies the target pixel by three times in the first (horizontal) direction to increase the horizontal resolution by 300%, creating a three-times magnified pattern.

## How does ClearType work?

ClearType is a form of sub-pixel font rendering that draws text using a pixel's red-green-blue (RGB) components separately instead of using the entire pixel. When the pixel is used in this way, horizontal resolution theoretically increases 300 percent.

https://docs.microsoft.com/en-us/typography/cleartype/#frequently-asked-questions-about-cleartype

36.     The '148 Accused Products each comprise "the pattern-determining unit being further operable to determine, in accordance with the raster image to be displayed, a "x" (x is an integral number) number of sub-pixel patterns positioned next to the target pixel on one side of the target pixel and a "y" (y is a natural number) number of sub-pixel patterns positioned next to the target pixel on the other side of the target pixel" of claim 4. For example, the ClearType technology utilizes sub-pixel rendering. Sub-pixel rendering allows for the borrowing of pixels from adjacent whole pixels. The following images illustrate how ClearType can determine sub-pixel patterns for x number of sub-pixels on one side of a target pixel, and y number of sub-pixels on the opposite side of said target pixel.



37.    The '148 Accused Products each comprise "a display control unit operable to allocate the three-times magnified pattern, the x-number of sub-pixel patterns, and the y-number of sub-pixel patterns to the light-emitting elements of the display device, thereby displaying an image on the display device" of claim 4. For example, the GPU or other componentry of the '148 Accused Products allocates the target pixel three-times magnified pattern, the x-number of sub-pixel patterns, and the y-number of sub-pixel patterns to display an image on the display device via the light-emitting elements of the display device.

38.    The '148 Accused Products each comprise the pattern-determining unit that "determines the three-times magnified pattern, the x-number of sub-pixel patterns and the y-number of sub-pixel patterns only when the target pixel has a predetermined pixel value." For example, The TrueType raster sets a bitmap incorporating render targets, which, when undergoing the ClearType rasterization process, is filtered for alpha values. The render targets include alpha modes with the alpha values. The alpha modes determine how the alpha value is applied to the pixels in the bitmap. If the alpha mode is set to "ignore," then the ClearType raster is utilized, and the sub-pixel rendering method is performed that borrows x-number of sub-pixels from a first laterally adjacent pixel and y-number of sub-pixels from the laterally adjacent pixel which is opposite the first laterally adjacent sub-pixel. ClearType performs sub-pixel rendering on a target

pixel with a predetermined pixel value. ClearType utilizes DIGX (DirectX Graphics Infrastructure, which handles, among other things, presenting rendered frames to a window or monitor for display) to format pixels using DXGI_FORMAT enumeration, where these enumerations define (in part) the bits allocated (e.g., 16 bits, 32 bits) to a pixel's color channel(s) and alpha value (each, and collectively, a "predetermined pixel value"). On information and belief, ClearType defaults to pixel values associated with the DXGI_FORMAT_B8G8R8A8 enumeration when a render target's pixel format and alpha mode is unknown:



Regardless of whether the **ID2D1HwndRenderTarget** is hardware accelerated, the DXGI_FORMAT_UNKNOWN format uses DXGI_FORMAT_B8G8R8A8 by default and the **D2D1_ALPHA_MODE_UNKNOWN** alpha mode uses **D2D1_ALPHA_MODE_IGNORE** by default.

https://docs.microsoft.com/en-us/windows/win32/direct2d/supported-pixel-formats-and-alpha-modes#cleartype-and-alpha-modes

Further, DXGI_FORMAT_B8G8R8A8_UNORM is described as a four-component, 32-bit unsigned-normalized integer pixel format that supports 8 bits for each pixel color channel and 8-bit pixel alpha, which means that the target pixel (as enumerated by DXGI_FORMAT_B8G8R8A8_UNORM) of the sub-pixel rendering process (carried out by ClearType) has a predetermined pixel value defined by e.g. the four separate values for each of the Blue, Green, Red pixel color channels, and the pixel's Alpha value.



DXGI_FORMAT_B8G8R8A8_UNORM
A four-component, 32-bit unsigned-normalized-integer format that supports 8 bits for each color channel and 8-bit alpha.

https://docs.microsoft.com/en-us/windows/win32/api/dxgiformat/ne-dxgiformat-dxgi_format



39.    The technology discussion above and the exemplary '148 Accused Products provide context for Plaintiff's infringement allegations.

40.    At a minimum, ASUSTeK has known of the '148 patent at least as early as the filing date of the complaint. In addition, ASUSTeK has known about the '148 patent since at least October 19, 2021, when ASUSTeK was provided notice of its infringement via a data room accessible to ASUSTeK. Further, ASUSTeK has known about the '148 patent since prior to the filing of the complaint when it received correspondence, including at least on February 2, 2022, from SPV alerting ASUSTeK to its infringement. Moreover, ASUSTeK has been on notice of the

'148 patent as a result of previous lawsuits filed by the Plaintiff against competitors of ASUSTeK and other relevant market participants, such as Acer.

41.     On information and belief, since at least the above-mentioned date when ASUSTeK was on notice of its infringement, ASUSTeK has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '148 Accused Products that include or are made using all of the limitations of one or more claims of the '148 patent to directly infringe one or more claims of the '148 patent by using, offering for sale, selling, and/or importing the '148 Accused Products. Since at least the notice provided on the above-mentioned date, ASUSTeK does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '148 patent. ASUSTeK intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '148 Accused Products, creating and/or maintaining established distribution channels for the '148 Accused Products into and within the United States, manufacturing the '148 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

42.     On information and belief, despite having knowledge of the '148 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '148 patent, ASUSTeK has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. ASUSTeK's infringing activities relative to the '148 patent have been,

and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

43.     SPV has been damaged as a result of ASUSTeK's infringing conduct described in this Count. ASUSTeK is, thus, liable to SPV in an amount that adequately compensates SPV for ASUSTeK's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 8,902,871)

44.     Plaintiff incorporates paragraphs 1 through 43 herein by reference.

45.     SPV is the assignee of the '871 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of all substantial rights in the '871 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

46.     The '871 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '871 patent issued from U.S. Patent Application No. 13/607,931.

47.     ASUSTeK has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '871 patent in this judicial district and elsewhere in Texas and the United States.

48.     On information and belief, ASUSTeK designs, develops, manufactures, assembles and markets mobile phones, tablets, laptops, computers, and other devices that support Wi-Fi Direct.

24

49.     ASUSTeK directly infringes the '871 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '871 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, ASUSTeK sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '871 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, ASUSTeK directly infringes the '871 patent through its direct involvement in the activities of its subsidiaries, including ACI, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '871 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. On information and belief, ASUSTeK offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, ASUSTeK is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., ACI, (under both the alter ego and agency theories) because, as an example and on information and belief, ASUSTeK and ACI are essentially the same company, and ASUSTeK has the right and ability to control its subsidiaries infringing acts and

receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., ACI.

50.     For example, ASUSTeK infringes claim 1 of the '871 patent via the Accused Products. The Accused Products comprise "a wireless base station connected to a wireless communication terminal" of claim 1. For example, in Wi-Fi Direct, each Accused Product is configured to function as a wireless base station connected to a wireless communication terminal (e.g., a second device with Wi-Fi Direct capability).

51.     The Accused Products include a wireless communication section (e.g., a Wi-Fi module) that communicates with the wireless communication terminal in accordance with a predetermined communication method (e.g., the Wi-Fi Direct protocols).

52.     The Accused Products include a control section (e.g., Wi-Fi module processor) that controls the wireless communication section. The control section controls the wireless communication section to establish a connection with the wireless communication terminal by using (i) a first connection which does not require an authentication procedure for connection with the wireless communication terminal, or (ii) a second connection which requires the authentication procedure for connection with the wireless communication terminal.

53.     A first wireless communication section (e.g., Wi-Fi module) of the Accused Products is configured to communicate with the wireless communication terminal in accordance with a first wireless communication method (e.g., IEEE 802.11).

54.     The second wireless communication section (e.g., Wi-Fi module) of the Accused Products is configured to communicate with the wireless communication terminal in accordance with a second wireless communication method (e.g., P2P protocol described in the "Wi-Fi Peer-to-Peer (P2P) Technical Specification").

55.     Prior to the first wireless communication section starting communication with the wireless communication terminal, the control section in the Accused Products controls the second wireless communication section, and transmits, to the wireless communication terminal, profile information that is necessary for the first wireless communication section to communicate with the wireless communication terminal. For example, the Accused Products transmit to another Wi-Fi Direct peer device, via the second method (e.g., P2P protocol), profile information (e.g., operating channel attributes) necessary for the devices to communicate via the first method (e.g., IEEE 802.11).

56.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

57.     At a minimum, ASUSTeK has known of the '871 patent at least as early as the filing date of the complaint. In addition, ASUSTeK has known about the '871 patent since at least August 29, 2019, when ASUSTeK was given access to a data room providing notice of its infringement. Further, ASUSTeK has known about the '871 patent since prior to the filing of the complaint when it received correspondence, including at least on February 2, 2022, from SPV alerting ASUSTeK to its infringement. Moreover, ASUSTeK has been on notice of the '871 patent as a result of previous lawsuits filed by the Plaintiff against competitors of ASUSTeK and other relevant market participants, such as TCL, Hisense, and LG.

58.     On information and belief, since at least the above-mentioned date when ASUSTeK was on notice of its infringement, ASUSTeK has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '871 patent to directly infringe one or more claims of the '871 patent by using,

offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, ASUSTeK does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '871 patent. ASUSTeK intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

59. On information and belief, despite having knowledge of the '871 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '871 patent, ASUSTeK has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. ASUSTeK's infringing activities relative to the '871 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

60. SPV has been damaged as a result of ASUSTeK's infringing conduct described in this Count. ASUSTeK is, thus, liable to SPV in an amount that adequately compensates SPV for ASUSTeK's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 9,357,441)

61.     Plaintiff incorporates paragraphs 1 through 60 herein by reference.

62.     SPV is the assignee of the '441 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of all substantial rights in the '441 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

63.     The '441 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '441 patent issued from U.S. Patent Application No. 14/747,164.

64.     ASUSTeK has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '441 patent in this judicial district and elsewhere in Texas and the United States.

65.     On information and belief, ASUSTeK designs, develops, manufactures, assembles and markets mobile phones, tablets, laptops, computers, and other devices that support Wi-Fi Direct.

66.     ASUSTeK directly infringes the '441 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '441 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, ASUSTeK sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing

29

that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '441 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, ASUSTeK directly infringes the '441 patent through its direct involvement in the activities of its subsidiaries, including ACI, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '441 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. On information and belief, ASUSTeK offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, ASUSTeK is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., ACI, (under both the alter ego and agency theories) because, as an example and on information and belief, ASUSTeK and ACI are essentially the same company, and ASUSTeK has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., ACI.

67.     For example, ASUSTeK infringes claim 1 of the '441 patent via the Accused Products. The Accused Products comprise the "wireless communication terminal" of claim 1. For example, the Accused Products connect to Wi-Fi and support Wi-Fi Direct. In Wi-Fi Direct, each Accused Product is enabled to function as a communication terminal that communicates with another device (e.g., another device with Wi-Fi Direct capability) that is enabled to function as a base station.

68.     The Accused Products comprise wireless communication circuitry operative to communicate with a wireless base station by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless base station, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless base station. For example, in the Accused Products (i.e., a Wi-Fi Direct peer), the communication terminal has wireless communication circuitry (e.g., Wi-Fi module) that communicates with another Wi-Fi Direct peer (i.e., the base station). The communication terminal establishes a connection with the base station using a connection that does not require authentication or a connection that does require authentication.

69.     The Accused Products comprise control circuitry operative to receive, by using the wireless communication circuitry, communication channel information from the wireless base station with a first communication method prior to the authentication connection starting with a second communication method, the communication channel information being necessary for the second communication method to select a communication channel for communicating with the wireless base station. In the Accused Products, the communication terminal has control circuitry (e.g., Wi-Fi module processor) that controls the wireless communication circuitry. The communication terminal (functioning as a Wi-Fi Direct peer device) receives from the base station (e.g., another Wi-Fi Direct peer device), via the first method (e.g., P2P), communication channel information (e.g., channel list and operating channel attributes) necessary for the devices to communicate via the second method (e.g., IEEE 802.11). The control circuity receives the communication channel information prior to the authentication connection starting with a second communication method.

70.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

71.     At a minimum, ASUSTeK has known of the '441 patent at least as early as the filing date of the complaint. In addition, ASUSTeK has known about the '441 patent since at least August 29, 2019, when ASUSTeK was given access to a data room providing notice of its infringement. Further, ASUSTeK has known about the '441 patent since prior to the filing of the complaint when it received correspondence, including at least on February 2, 2022, from SPV alerting ASUSTeK to its infringement. Moreover, ASUSTeK has been on notice of the '441 patent as a result of previous lawsuits filed by the Plaintiff against competitors of ASUSTeK and other relevant market participants, such as TCL, Hisense, and LG.

72.     On information and belief, since at least the above-mentioned date when ASUSTeK was on notice of its infringement, ASUSTeK has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '441 patent to directly infringe one or more claims of the '441 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, ASUSTeK does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '441 patent. ASUSTeK intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making

32

available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

73.     On information and belief, despite having knowledge of the '441 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '441 patent, ASUSTeK has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. ASUSTeK's infringing activities relative to the '441 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

74.     SPV has been damaged as a result of ASUSTeK's infringing conduct described in this Count. ASUSTeK is, thus, liable to SPV in an amount that adequately compensates SPV for ASUSTeK's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **COUNT IV**
### (INFRINGEMENT OF U.S. PATENT NO. 10,039,144)

75.     Plaintiff incorporates paragraphs 1 through 74 herein by reference.

76.     SPV is the assignee of the '144 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System" with ownership of all substantial rights in the '144 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

77.     The '144 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '144 patent issued from U.S. Patent Application No. 15/142,258.

78.     ASUSTeK has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '144 patent in this judicial district and elsewhere in Texas and the United States.

79.     On information and belief, ASUSTeK designs, develops, manufactures, assembles and markets mobile phones, tablets, laptops, computers, and other devices that support Wi-Fi Direct.

80.     ASUSTeK directly infringes the '144 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '144 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, ASUSTeK sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '144 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, ASUSTeK directly infringes the '144 patent through its direct involvement in the activities of its subsidiaries, including ACI., including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States

for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '144 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. On information and belief, ASUSTeK offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, ASUSTeK is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., ACI, (under both the alter ego and agency theories) because, as an example and on information and belief, ASUSTeK and ACI are essentially the same company, and ASUSTeK has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., ACI.

81.     For example, ASUSTeK infringes claim 1 of the '144 patent via the Accused Products. The Accused Products comprise the "wireless communication device" of claim 1. For example, the Accused Products connect to Wi-Fi and support Wi-Fi Direct. In Wi-Fi Direct, each Accused Product is enabled to function as a communication terminal that communicates with another device (e.g., another device with Wi-Fi Direct capability) that is enabled to function as a wireless station.

82.     The Accused Products comprise wireless communication circuitry operative to communicate with a wireless station by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless station, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless station. For example, the Accused Products (functioning as a Wi-Fi Direct peer device) establish a connection with another Wi-Fi Direct peer device (i.e., a wireless station) using a connection that does not require authentication or a connection that does require authentication.

83.     The Accused Products comprise control circuitry operative to receive, by using the wireless communication circuitry, profile information from the wireless station with a first communication method prior to the authentication connection starting with a second communication method, the profile information being necessary for the second communication method to communicate with the wireless station. For example, the Accused Products (i.e., Wi-Fi Direct peer devices) receive from another Wi-Fi Direct peer device (i.e., the wireless station), via the first communication method (e.g., P2P), profile information (e.g., channel list and operating channel attributes) necessary for the devices to communicate via the second communication method (e.g., IEEE 802.11).

84.     The Accused Products comprise the control circuitry that is operative to control the wireless communication circuitry to receive a content with the second communication method, and the control circuitry further controls the wireless communication circuitry to receive information that is related to the content with the first communication method. For example, the Accused Products receive content (e.g., WSC Exchange data, such as a Device Password) from another Wi-Fi Direct peer device (i.e., the wireless station), via the second communication method (e.g., IEEE 802.11). And the Accused Products receive information that is related to the content (e.g., WSC IE data, such as a Device Password ID) from the wireless station, via the first communication method (e.g., P2P).

85.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

86.     At a minimum, ASUSTeK has known of the '144 patent at least as early as the filing date of the complaint. In addition, ASUSTeK has known about the '144 patent since at least August 29, 2019, when ASUSTeK was given access to a data room providing notice of its

infringement. Further, ASUSTeK has known about the '144 patent since prior to the filing of the complaint when it received correspondence, including at least on February 2, 2022, from SPV alerting ASUSTeK to its infringement. Moreover, ASUSTeK has been on notice of the '144 patent as a result of previous lawsuits filed by the Plaintiff against competitors of ASUSTeK and other relevant market participants, such as TCL, Hisense, and LG.

87.     On information and belief, since at least the above-mentioned date when ASUSTeK was on notice of its infringement, ASUSTeK has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '144 patent to directly infringe one or more claims of the '144 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, ASUSTeK does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '144 patent. ASUSTeK intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

88.     On information and belief, despite having knowledge of the '144 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '144 patent,

ASUSTeK has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. ASUSTeK's infringing activities relative to the '144 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

89.    SPV has been damaged as a result of ASUSTeK's infringing conduct described in this Count. ASUSTeK is, thus, liable to SPV in an amount that adequately compensates SPV for ASUSTeK's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

90.    Plaintiff SPV is entitled to recover from ASUSTeK the damages sustained by Plaintiff as a result of ASUSTeK's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

91.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

92.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

93.     Plaintiff respectfully requests that the Court find in its favor and against ASUSTeK, and that the Court grant Plaintiff the following relief:

1.   A judgment that ASUSTeK has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.   A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by ASUSTeK;

3.   A judgment and order requiring ASUSTeK to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.   A judgment and order requiring ASUSTeK to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.   A judgment and order finding this to be an exceptional case and requiring ASUSTeK to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.   Such other and further relief as the Court deems just and equitable.

Dated: February 3, 2022

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 N. Harwood St.
Suite 250
Dallas, TX 75201
Tel: (817) 377-9111
pat@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 806-3808
murphy@nelbum.com

**Attorneys for Plaintiff**
**Sovereign Peak Ventures, LLC**